**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER EXNER, individually, and as Administrator of the Estate of John Jay Exner, Deceased, | ) | |
| Plaintiff, | ) | Case No. 24-cv-3136 |
| v. | ) | Hon. Steven C. Seeger |
| ROBERT F. EBEL, MANINDERJIT LAMBU SINGH, and SCHNEIDER NATIONAL CARRIERS, INC., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

John Exner had car trouble when driving a rental car on the highway. So he pulled over, stopped on the shoulder, and turned his flashers on. He needed help, but there wasn't much that he could do. He could only wait patiently on the side of the busy interstate, sitting in a vulnerable spot with traffic flying nearby.

Maninderjit Singh wasn't far behind. He drove a semi-trailer truck in the right lane, next to the shoulder, headed in the direction of Exner. He was speeding, but not by much. He chugged along going five to eight miles per hour over the speed limit.

Another driver, Robert Ebel, was headed in that direction, too. And he was in a big hurry. He drove his Tesla in a blaze of speed. The need for speed wasn't his biggest problem. Ebel was driving under the influence of cocaine. Speeding mixed with cocaine was a recipe for disaster.

Ebel sped up behind Singh's truck in the right lane. He wanted to pick up the pace and pass the semi. But the middle lane was full, and he couldn't get over. So Ebel made the fateful decision to pass Singh's truck by driving on the shoulder.

That maneuver put Ebel directly in the path of Exner, who sat on the shoulder in his stranded car. After getting on the shoulder, Ebel spotted Exner's car as he sped right toward him. Instead of slowing down, or getting back in the right lane, Ebel floored it. He tried to zoom ahead, squeeze through, and pass the semi on the shoulder before reaching Exner's car.

He didn't make it. Ebel's Tesla slammed into Exner's rental car on the shoulder of the highway. The damage was catastrophic. Exner passed away the next day.

Jennifer Exner, the wife of the decedent, later sued Ebel, Singh, and Schneider National Carriers ("SNC"), the trucking company. She brought a collection of negligence claims. Relevant here, she claims that Singh contributed to the crash by speeding and by continuing to drive in the right lane despite spotting a stranded car.

After discovery, Singh and SNC moved for summary judgment based on a lack of proximate causation. They also filed a second motion for summary judgment about economic damages.

For the following reasons, the motion for summary judgment about proximate causation is granted. The motion for summary judgment about damages is denied as moot.

**Background**

Maninderjit Singh worked as a truck driver for Schneider National Carriers. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶¶ 1–2 (Dckt. No. 122). On August 22, 2020, Singh drove a semi-truck to a Walmart Distribution Center to pick up his second delivery of the day. *Id*. at ¶¶ 3, 6.

He traveled southbound on Interstate 55 in the Chicagoland suburbs. Interstate 55 contained three lanes, and a shoulder to the right of the rightmost lane. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 18 (Dckt. No. 115).

Singh drove in the right lane. *Id*. at ¶ 7. At some point, he approached the Cass Avenue exit, where a temporary fourth exit lane opens to the right. *Id*. at ¶ 18. After that exit, the road reverts to three lanes and a shoulder. *Id.*

Singh went underneath a bridge before the exit, and as he came out, he spotted a Toyota Camry ahead. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶¶ 11–12 (Dckt. No. 122). The Camry was John Exner's rental car, sitting stranded.

The Camry was parked past the exit. The car wasn't on the highway itself – it was entirely on the shoulder of the road. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 26 (Dckt. No. 115). The driver door stood a few feet inside a solid white line that demarcated the right lane from the shoulder. *Id.*

According to Singh, he took his foot off the gas and tried to see if he could move into the center lane. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶ 10 (Dckt. No. 122). He decided that traffic in the center lane prevented him from moving over, so he stayed in the right lane. *Id*. at ¶ 29.

Singh shared the highway with Robert Ebel, who drove a 2015 Tesla Model S. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 4 (Dckt. No. 115). Ebel came barreling down the highway behind Singh. *Id.* at ¶¶ 22–23.

By all accounts, Ebel drove like a maniac. He weaved in and out of traffic "at high speeds," swerved between lanes, and zipped past cars "like they were standing still." *Id*. at ¶ 22.

Ebel wasn't in any position to drive at all, let alone drive at a high rate of speed. He was under the influence of cocaine. *Id.* at ¶ 38.

Ebel sped along and came behind Singh in the right lane. *Id*. at ¶ 23. Ebel wanted to pass the truck, but traffic blocked him in the center lane. *Id*. at ¶ 24.

That's when Ebel made a fateful decision. Ebel veered to the right, onto the temporary exit lane. *Id*. at ¶ 25. He spotted Exner's Camry, sitting on the shoulder in front of him. *Id*. at ¶ 26.

Ebel didn't slow down. *Id*. at ¶ 27. And he didn't pull back into the right lane behind Singh. *Id*. Instead, Ebel sped up. *Id*. at ¶¶ 27–28. He floored it and tried to squeeze between Singh's truck and Exner's Camry, and pass Singh on the shoulder. *Id*.

The speed limit was 55 miles per hour. *Id*. at ¶ 32. Ebel was already going too fast, speeding along at 73 miles per hour. But he hit the gas and pushed the pedal as far as it would go. The Tesla accelerated to 97 miles per hour. *Id*. at ¶ 28.

Ebel tried to pass Singh's truck before reaching Exner's Camry. He didn't pull it off.

Ebel's Tesla smashed into Exner's Camry, causing catastrophic damage that crumpled the left side of the vehicle. *Id*. at ¶ 33. The impact pushed the Camry into a grass embankment. *Id*. at ¶ 34.

John Exner, sitting in the driver's seat, sustained multiple traumatic injuries. He died the next day. *Id*. at ¶ 35.

Ebel's car bounced into the right lane, hitting the passenger side of Singh's truck. *Id*. at ¶ 39; *see* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶ 5 (Dckt. No. 122). The impact forced Singh's truck to partly enter the center lane. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶ 5 (Dckt. No. 122).

Data recovered from Singh's truck showed that his speed had ranged from 59.7 miles per hour to 62.9 miles per hour in the ten seconds before Ebel's crash with the Camry. *Id*. at ¶ 18. In the last second, his truck dropped to 59.4 miles per hour. *Id*.

Ebel survived. He was later convicted of felony aggravated driving under the influence of drugs, including cocaine, amphetamines, and THC. *See* Pl.'s Resp. to Defs.' Statement of Facts, at ¶ 38 (Dckt. No. 115); *see also* Ebel Plea Hearing, Ex. K, at 12:07-12, 16:10-14 (Dckt. No. 91-11). He ended a life, and received a sentence of twelve years. *See* Joint Status Report (Dckt. No. 37).

During the change of plea hearing, Ebel admitted that two witnesses would testify that he was "driving aggressively and made approximately a dozen lane changes prior to crashing into the Toyota." *See* Ebel Plea Hearing, Ex. K, at 13:23 – 14:8 (Dckt. No. 91-11). At the hospital, Ebel told state troopers that he was in a rush to pick up his daughter. *Id.* at 14:14-24. He admitted that he was "driving like an ass," and that the accident was "100 percent my fault." *Id.*

Jennifer Exner, the decedent's wife, sued Ebel, Singh, and his employer. She also sued the rental car company, EAN Holdings, LLC, and later settled.

Ms. Exner brings survival and wrongful death claims, alleging that Ebel and Singh's negligence caused the crash. *See* Cplt., at ¶¶ 26–37 (Dckt. No. 1). She alleges that Singh contributed to the crash by speeding and by failing to move to the center lane. *Id*. at ¶ 35.

Illinois law requires drivers to switch lanes – or if that's not possible, to slow down – when approaching disabled vehicles. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶ 20 (Dckt. No. 122). SNC also trains its drivers to switch lanes or slow down in that situation. *Id*. at ¶ 25.

Ms. Exner offered expert testimony that Singh could have entered the center lane, since his truck didn't hit other vehicles when the crash forced it into part of the center lane. *Id*. at ¶ 57.[1] She also offered testimony to show that, if Singh had gone the speed limit, an additional 60.7 feet of space would have existed between Singh's truck and Exner's Camry. *Id*. at ¶ 61.

After discovery, Singh and SNC moved for summary judgment. *See* Mtn. for Summ. J. (Dckt. No. 91). They argue that no reasonable jury could find that Singh's driving proximately caused the crash. *Id*. at 3–17. They also filed a second motion for summary judgment, challenging the expert's opinion about economic damages. *See* Mtn. for Partial Summ. J. (Dckt. No. 92).

**Legal Standard**

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

---

[1] Defendants objected to paragraphs 41–61 of Ms. Exner's statement of additional facts, because local rule 56.1(d)(5) limits an opposing party to 40 numbered paragraphs, unless they receive the Court's permission for more. *See* Defs.' Resp. to Pl.'s Statement of Additional Facts, at ¶¶ 41–61 (Dckt. No. 122). Defendants are correct, but this Court would have given Ms. Exner permission to exceed the limits if she had asked, given the nature of the case. So, the Court sees no harm in considering her additional facts.

The Court construes all facts in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322.

**Analysis**

**I. Negligence**

The issue at hand is proximate causation. On this record, no reasonable jury could conclude that Singh's driving proximately caused the accident.

Under Illinois law, negligence requires a plaintiff to prove "[1] a duty owed by the defendant to the plaintiff, [2] a breach of that duty, and [3] an injury [4] proximately caused by the breach." *See Scott v. Wendy's Properties, LLC*, 131 F.4th 815, 819 (7th Cir. 2025) (quoting *Johnson v. Armstrong*, 211 N.E.3d 355, 371 (Ill. 2022)) (alterations in original).

"Proximate cause comprises two sub-elements: 'cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm.'" *Id*. (quoting *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992)).

"Under Illinois law, 'the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal

cause.'" *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 851 (N.D. Ill. 2022) (quoting *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1128 (Ill. 2004)).

Cause in fact means that a plaintiff's injury would not have happened without the defendant's actions. *See Scott*, 131 F.4th at 819 ("The cause in fact analysis presents a simple question. Would the injury have occurred absent the defendant's conduct?") (internal citation omitted). When it comes to cause in fact, the question is whether Y would have happened without X.

Illinois courts evaluate cause in fact by employing a traditional "but for" test or a "substantial factor" test. *See In re Boeing*, 638 F. Supp. 3d at 851 ("Under the 'but for' test, a defendant's conduct is not the cause of an event if the event would have occurred without it. Under the 'substantial factor' test, the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about.") (quoting *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1124 (Ill. 2015)); *see also Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) ("A defendant's conduct is a cause-in-fact of a plaintiff's injury if the conduct 'was a material element and a substantial factor in bringing about the injury.'") (quoting *Lee,* 605 N.E.2d at 502).

But legal cause is different. Legal cause is "'largely a question of foreseeability' that answers if 'the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct.'" *See Scott*, 131 F.4th at 819 (quoting *Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004)) (emphasis in original); *see also In re Boeing*, 638 F. Supp. 3d at 851 (explaining that the "injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act"). When it comes to proximate causation, the question is whether Y is a natural and foreseeable consequence of X.

Causation is a little like a Rube Goldberg machine. It's easy to see but-for causation. Maybe the trap would not have fallen on the mouse unless the ping pong ball had gone down a ramp, entered the bucket, tipped over, pulled a string, pushed a block, knocked down a line of dominoes, and so on. Each step in the chain is essential, so there is but-for causation. But proximate causation places limits on the responsibility of a defendant. It's not reasonably foreseeable that pushing a ping pong ball down a ramp could lead to the trapping of a mouse.

Sometimes third parties play a role in causing an injury, too. In that situation, courts "ask whether 'the intervening efficient cause [w]as a natural and probable result of the [defendant]'s own negligence.'" *See Scott*, 131 F.4th at 820 (quoting *First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068, 1072 (Ill. 1999)) (alterations in original). And that inquiry falls under the legal cause analysis. *Id.*; *see also Ashley v. Schneider National Carriers, Inc.*, 2016 WL 3125056, at *2 (N.D. Ill. 2016) ("If the intervening act was not foreseeable, it breaks the causal chain such that the first wrongdoer is not considered the proximate cause of the injury.").

Illinois courts also distinguish a condition from a cause. Proximate causation does not exist if a defendant simply creates a condition that makes it possible for a third party to inflict an injury through an independent act. If a defendant's negligence "does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *See Ashley*, 2016 WL 3125056, at *3 (quoting *Galman*, 720 N.E.2d at 1071).

In *Galman*, a car hit a pedestrian when she tried to jaywalk around an illegally parked truck in the middle of a block. *See Galman*, 720 N.E.2d at 1073. The "relevant inquiry" was

"whether the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct." *Id.* (emphasis in original).

The Illinois Supreme Court ruled that it was not "reasonably foreseeable that violating a 'no parking' sign at mid-block would likely result in a pedestrian's ignoring a marked crosswalk at the corner, walking to mid-block, and attempting to cross" around the truck in violation of the law. *Id.* The truck didn't cause the pedestrian "to make that decision, nor reasonably could have anticipated that decision as a likely consequence." *Id*.

The Illinois Supreme Court distinguished a prior case where a car hit a boy who walked around a bus that parked in the middle of a crosswalk. *Id*. at 1074 (citing *Scerba v. City of Chicago*, 672 N.E.2d 312 (Ill. App. Ct. 1996)). In *Scerba*, the parked bus was a proximate cause because "it was likely that, as result, pedestrians would be forced to cross the street somewhere other than in the designated crosswalk." *Id*.

Unlike the accident in *Scerba*, the accident in *Galman* was not foreseeable based on the alleged infraction. True, the truck in *Galman* did violate a "no parking" sign. But the truck parked in the middle of the block, and nothing about that parking job "increased the likelihood that a pedestrian would forgo an open crosswalk." *Id*.

*Scerba* and *Galman* illustrate the reach and the limits of proximate causation. It is foreseeable that parking on a crosswalk could force pedestrians to walk outside a protected area, and put them in harm's way. *See Scerba*, 672 N.E.2d 312. But it is not foreseeable that parking in the middle of a block and violating a "no parking" sign could affect a jaywalking pedestrian. *See Galman*, 720 N.E.2d at 1073. So proximate causation existed in one case (*Scerba*), but didn't exist in the other (*Galman*).

Ms. Exner claims that Singh contributed to the crash by speeding and by failing to move to the center lane. As she sees things, Ebel didn't have enough room to pass Singh's truck. If Singh had driven more slowly, Exner would have had more time and more space to pass the semi. And if Singh had moved into the center lane, Ebel would not have needed to pass on the shoulder at all.

Under that theory, if Singh had slowed down or driven in the middle lane, it would have allowed for "more than enough space for Ebel to 'shoot the gap' as Ebel intended." *See* Pl.'s Resp. to Mtn. for Summ. J., at 5–6 (Dckt. No. 116).

This Court must view the facts in a light favorable to Ms. Exner as the non-movant. This Court assumes, for the sake of argument, that Singh's driving was a cause-in-fact of the crash. Maybe Ebel would have had enough room to squeeze past the truck if Singh had driven a little slower. And maybe Ebel would not have driven on the shoulder at all if Singh had moved into the middle lane (assuming that maneuver was doable).

Even so, on this record, no reasonable jury could conclude that Singh's driving was the legal cause of the accident.

It is foreseeable that speeding could cause an accident. The driver could rear-end another car, or stray into another lane, or lose control of the vehicle, or collide into a wall, or lack adequate response time to avoid a hazard, or do countless other things that can cause a crash. All of those possibilities involve the safety of driving that particular vehicle.

It is not foreseeable that driving too fast could limit the space available for another reckless driver. Other drivers typically don't drive on the shoulder, and attempt to speed around other vehicles at a high rate of speed. That type of behavior does happen. But reckless driving by other drivers is not a natural or foreseeable consequence of speeding.

The same conclusion applies to driving in the right lane. It is foreseeable that driving in the right lane could lead a driver to hit a stranded car on the side of the road. It is not foreseeable that driving in the right lane could prompt another driver to drive recklessly by speeding on the shoulder in an attempt to pass another vehicle.

Singh had no way to foresee the disaster that unfolded. He drove a little too fast, and he stayed in the right lane despite seeing a disabled car on the side of the road. That situation could have caused an accident if, say, Singh had strayed into the shoulder and hit Exner's car. But that's not what unfolded.

At most, Singh created a condition that made it possible for Ebel to cause a crash by driving in the shoulder and going way too fast. But the reckless driving by Ebel was an intervening act. Merely creating a condition cannot give rise to proximate causation when a third party commits an intervening act. *See Ashley*, 2016 WL 3125056, at *3.

The simple reality is that Ebel caused the accident. The crash was not a natural or foreseeable consequence of Singh driving a little too fast in the right lane.

## II. Economic Damages

Defendants also moved for summary judgment on the issue of economic damages. There is no need to reach that issue, given that there is no liability.

* * *

The Exner family suffered a terrible tragedy, and the loss of life undoubtedly continues to affect countless people. It is more than understandable for the family to seek compensation and hold others accountable for their unspeakable loss. Nothing will ever repair the situation or replace what was lost.

In the end, Illinois law about proximate causation does not allow the family to hold Singh and the trucking company responsible. Even so, nothing in this opinion casts any doubt on the gravity of the loss, or on the devastation that Ebel inflicted on that terrible day.

**Conclusion**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment on the issue of liability (Dckt. No. 91), and denies Defendants' motion for partial summary judgment on the issue of economic damages as moot (Dckt. No. 92).

Date: August 18, 2026

Steven C. Seeger
United States District Judge